**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| TAHO PHARMACEUTICALS LIMITED, <br><br> *Plaintiff,* <br><br> v. <br><br> AZURITY PHARMACEUTICALS, INC. <br><br> *Defendant*. | Case No.  26-11312 <br><br> **JURY TRIAL DEMANDED** <br><br> **PUBLIC VERSION-REDACTED DOCUMENT** |

**COMPLAINT FOR MISAPPROPRIATION OF**
**TRADE SECRETS, BREACH OF CONTRACT, AND UNFAIR COMPETITION**

Plaintiff TAHO Pharmaceuticals Limited ("TAHO"), by and through its attorneys alleges the following against Azurity Pharmaceuticals, Inc. ("Azurity" or "Defendant"):

I.      **INTRODUCTION**

1.      This case arises from Defendant's misappropriation and misuse of proprietary, confidential information and trade secrets concerning TAHO's innovative  apixaban product. Defendant breached its confidentiality agreement with TAHO and misused confidential TAHO information and trade secrets shared under that agreement to compete unfairly through such misappropriation in the market for TAHO's alternative apixaban product.

2.      TAHO Pharmaceuticals Ltd. is a leading specialty pharmaceutical company that focuses on improving the delivery of existing drugs using its proprietary Transepithelial Delivery System ("TDS") platform technology.  TAHO's product portfolio is diverse, serving a variety of therapeutic areas, including antithrombotic agents, opioid overdose antidotes, addiction treatments, pediatric attention-deficit/hyperactivity disorder, and chemotherapy-induced antiemetics.  In 2018, TAHO began work on an improved formulation of apixaban.

3.     Apixaban is a factor Xa inhibitor, in other words, an anticoagulant.  It is used to treat and prevent blood clots from deep vein thrombosis, and to reduce the risk of stroke for those with nonvalvular atrial fibrillation.  According to the U.S. Centers for Disease Control and Prevention ("CDC"), approximately every 40 seconds, someone in the United States suffers a stroke, and every 3 minutes and 14 seconds, someone dies of a stroke in the United States.

4.     Apixaban is presently offered and sold in tablet form by Bristol-Myers Squibb ("BMS") and Pfizer under the brand name Eliquis®.  Eliquis® was first approved by the U.S. Food and Drug Administration ("FDA") in December 2012.  The Eliquis® market hit approximately $26.1 billion in sales in 2024 and is projected to reach more than approximately $30 billion by 2034.

5.     TAHO developed its apixaban oral dissolving film ("ODF") product to offer a safer and more-accessible treatment option for those who require anticoagulant therapy multiple times a day but have difficulty swallowing.  After years of effort and research, TAHO developed TAH3311, the world's first apixaban oral dissolving film.  TAH3311 does not require utilization of a feeding tube, unlike tablet formulations of apixaban.

6.     More than a dozen pharmaceutical companies have sought FDA approval to market a tablet formulation of apixaban.  None of these companies successfully developed a formulation of apixaban that both (1) meets the performance standards of Eliquis® , and (2) overcomes the drawbacks of previous formulations of apixaban: namely, issues with compliance, and risk of choking and aspiration pneumonia.  Challenging technological barriers deterred other companies from successfully developing alternative formulations of apixaban that could overcome the known drawbacks of tablet formulations due to the physiochemical properties of apixaban.

7.    In 2021, TAHO and Azurity began discussions about a collaboration on TAH3311. The parties entered into a Confidentiality Agreement in February 2022 pursuant to which TAHO then shared valuable proprietary and confidential information, including trade secrets concerning its TAH3311 product.

8.    Rather than use TAHO's confidential and competitively valuable information for the limited and agreed-to purpose under the Confidentiality Agreement, Azurity breached the agreement and misappropriated TAHO's proprietary, confidential information and trade secrets in an attempt to compete with TAHO's TAH3311 product.  Over a period of many months, Azurity conducted a sophisticated and covert campaign to misappropriate TAHO's highly valuable proprietary, confidential information including trade secrets under the guise of collaboration. Using this misappropriated information, Azurity made an apixaban product in line with TAHO's design, without taking the risks or incurring the costs that TAHO did.

9.    For example, as of 2022, upon information and belief, Azurity had neither an apixaban product in its pipeline, nor any U.S. patent or application on apixaban.  But in just three short years, Azurity managed not only to file a 505(b)(2) application with FDA seeking approval to market an apixaban product, but also to acquire a portfolio of U.S. patents and patent applications on apixaban—through its strategic acquisition of Slayback Pharmaceuticals LLC ("Slayback") in September 2023—and modify the pending claims in those patent applications using TAHO's proprietary information.

10.    Between 2022 and 2024, Azurity continued to ask TAHO about its development and regulatory plans, but never advised TAHO of its competing plans or that it was not seriously considering a collaboration.  In fact, even after Azurity acquired Slayback, Azurity continued to seek proprietary, confidential information and trade secrets concerning TAHO's apixaban product.

3

It was only when BMS and Pfizer sued Azurity regarding its apixaban product in December 2025 that Azurity's scheme was finally exposed.

11.     Azurity developed its apixaban product and strategy by breaching its agreement with TAHO and through the theft and improper use of the proprietary, confidential information and trade secrets that TAHO disclosed to Azurity in good faith and under the protections of a Confidentiality Agreement.  This suit seeks to stop that misuse and seek redress for Defendant's ill-gotten gains.

## II.     NATURE OF THE ACTION

12.     This is an action for misappropriation of trade secrets in violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*. ("DTSA"); misappropriation of trade secrets in violation of the Massachusetts Uniform Trade Secrets Act, Mass. Gen. Laws ch. 93, §§ 42–42G ("MUTSA"); breach of contract; and unfair competition and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A, § 11.

## III.     THE PARTIES

13.     Plaintiff TAHO is a corporation organized and existing under the laws of Taiwan, with its corporate headquarters at 3F., No. 550, Ruiguang Road, Neihu District, Taipei, 11492, Taiwan.  TAHO is a specialty pharmaceutical company focused on developing innovative drug delivery technologies and specialty pharmaceutical products.  Through its proprietary platforms, TAHO is dedicated to improving patient access and therapeutic outcomes worldwide.

14.     Upon information and belief, Defendant Azurity is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business and corporate headquarters at 8 Cabot Road, Suite 2000, Woburn, Massachusetts 01801, USA. Azurity does business throughout the United States by marketing, selling, and making available its

pharmaceutical products throughout the United States, including in the Commonwealth of Massachusetts.

## IV.    JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over TAHO's federal claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836 (b)-(c).  The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between the citizens of a State and citizens or subjects of a foreign state.

16.    This Court has supplemental jurisdiction over TAHO's state law claims for misappropriation of trade secrets under M.G.L. c. 93, §§ 42–42G, breach of contract, and unfair competition and deceptive trade practices under M.G.L. c. 93A, § 11 pursuant to 28 U.S.C. § 1367.

17.    This Court has personal jurisdiction over Azurity because Azurity's principal place of business is in Woburn, Massachusetts, and therefore Azurity resides in this District.

18.    This Court has personal jurisdiction over Azurity because the claims against it arise out of activities with substantial and direct connections to Massachusetts: Azurity's headquarters and principal place of business is in the Commonwealth; Azurity regularly transacts and solicits business in the Commonwealth; Azurity has caused tortious injury by an act or omission within the Commonwealth; and Azurity engages in other persistent courses of conduct, and derives substantial revenue within the Commonwealth.  On information and belief, Azurity committed acts of trade secret misappropriation within the Commonwealth at its principal place of business.  On information and belief, Azurity further committed breach of the Confidentiality Agreement with TAHO within the Commonwealth at its principal place of business.

19.    Venue is proper in this judicial District for all claims under 28 U.S.C. § 1391(b)(1), as Defendant Azurity resides in this District, and under 28 U.S.C. § 1391(b)(2), because a

substantial part of the events giving rise to the claims occurred in this District. Specifically, Defendant Azurity improperly used TAHO's confidential and trade secret information in this District and breached the parties' Confidentiality Agreement in this District.

## V.    FACTUAL BACKGROUND AND ALLEGATIONS

### A.    Apixaban

20.    Apixaban is a factor Xa inhibitor that is used to treat and prevent blood clots and reduce the risk of stroke in individuals with nonvalvular atrial fibrillation. It is presently sold under the brand name Eliquis® by BMS and Pfizer.

21.    BMS developed apixaban in the early 2000s as a safer alternative to warfarin. BMS and Pfizer announced their collaboration to develop and commercialize apixaban in 2007. Their collaboration required Pfizer to make an upfront payment to BMS for $250 million and additional payments of upwards of $750 million pursuant to certain development and regulatory milestones. BMS and Pfizer went on to receive FDA approval for their tablet formulation of apixaban in 2012. Clinical trials leading to the approval of Eliquis® compared Eliquis® to warfarin and found that Eliquis® was superior to warfarin in, for example, reducing the risk of major bleeding and gastrointestinal bleeds, and unlike warfarin, did not require routine monitoring.

### B.    Limitations to Apixaban Use

22.    Despite Eliquis®'s superiority over warfarin, additional patient needs existed that have not been met by existing formulations of apixaban. Individuals who suffer a stroke often have difficulty swallowing or "post-stroke dysphagia," which is a common complication affecting many patients in the first few hours and 11-50% of patients as late as at six months. Aspiration of ingested foods, liquids or oral secretions caused by dysphagia continues to be the primary risk factor for cases of pneumonia after a stroke. Requiring stroke patients to take apixaban in tablet form can pose these risks. And elderly patients as well as young children may generally be unable

to swallow solid dosage forms of apixaban.  As a result, these patients are prone to medication errors from either delaying taking their doses or skipping their doses altogether.

23.    Apixaban is one of the most upstream anti-thrombotic drugs.  While safer than warfarin, apixaban can cause gastrointestinal and rectal bleeding when administered orally.  While transdermal delivery, such as via a patch,  offers the potential to avoid such side effects, it faces additional technological barriers given the physiochemical properties of apixaban, specifically apixaban's poor water solubility, high melting point, and polar surface area.

24.    Apixaban is known to have poor solubility and low bioavailability.  Poor solubility can lead to slow and incomplete absorption of a drug, along with low bioavailability.  Enhancing drug solubility, along with oral bioavailability, continues to be one of the most challenging aspects of drug development of apixaban.

25.    In sum, there has been a persistent need for an apixaban formulation that not only continually delivers apixaban over an extended period of time, thereby lessening the number of doses required a day, but also provides an improved method of delivering apixaban that poses less risk of aspiration and pneumonia.

**C.    TAHO and Its Development of a Unique Apixaban Formulation and Strategy**

26.    Founded in 2010, TAHO is a specialty pharmaceutical company whose mission is to provide innovative and compassionate solutions to patients.  TAHO specializes in oral film and transdermal drug delivery systems.  Its proprietary technology allows TAHO to offer efficient transdermal and transmucosal delivery of small-molecule drugs.  Developed on TAHO's proprietary Transepithelial Delivery System platform, TAH3311, an oral dissolving film, offers a fast-dissolving alternative to tablet forms of apixaban.

7

27.     Building on this platform, TAHO was uniquely positioned to offer an apixaban product that allowed for the release profile necessary for efficacy while decreasing the known bleeding side effects of apixaban, in a formulation that would make apixaban more accessible to stroke patients taking the drug.

28.     In 2018, TAHO recognized the market need for an alternative oral formulation of apixaban and the ways in which it could utilize its proprietary technology to offer an oral dissolving film.  It began development of its apixaban product in 2018.

29.     The result of TAHO's research is the world's first apixaban oral dissolving film. TAHO successfully overcame the technological barriers to offer an alternative oral formulation that met the additional needs of patients.  TAH3311 utilizes TAHO's proprietary TDS platform to offer a thin film that dissolves instantly on the tongue without water.  This formulation therefore makes delivery of apixaban simpler and more accessible for patients.

30.     Clinical trial results for TAH3311 provided early signs of TAH3311's future success.  TAHO announced the completion of its pivotal trial for TAH3311 in January 2025.  The trial demonstrated that TAH3311 is bioequivalent to Eliquis®.  TAHO has also received European Medicines Agency ("EMA") validation of its marketing authorization application for TAH3311 in November 2025.

31.     In addition to hitting its development milestones, TAHO successfully secured patent protection for its oral dissolving film, for example, U.S. Patent 12,036,216 ("the '216 patent"), which issued on July 16, 2024.  The application that issued as the '216 patent was filed on June 3, 2022, and received its notice of allowance on April 15, 2024.  A copy of the '216 patent is attached as **Exhibit A.**

8

**D.    Azurity and its Predecessor Express Interest in TAH3311**

32.    Given the unique and substantial product opportunity, TAHO decided to look for opportunities to either enter into a licensing deal or a co-development deal to commercialize its apixaban product. TAHO decided to contact several companies, including Arbor Pharmaceuticals, LLC ("Arbor").

33.    TAHO began discussing a potential collaboration with Arbor in July 2021. On July 27, 2021, Milky Kao, TAHO's then-Vice President of Business Development, met via teleconference with Ashley Prange, Arbor's Senior Manager of Business Development, and Brandon Feil, Arbor's Business Development Analyst. Following that meeting, Mr. Kao provided Arbor with high-level information regarding █████████████████████████████ █████████████████████████████████████████████████.

34.    On August 20, 2021, Mr. Kao provided Arbor with ███████████████ ███████████████████████████████████████████ ████████.

35.    On August 23, 2021, Ms. Prange ███████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████ ███████████████████████████████████ █████████████████████.

37.    On September 20, 2021, Azurity closed on its acquisition of Arbor. Ms. Prange and Mr. Feil joined Azurity and continued discussions with TAHO on Azurity's behalf.

38.    Azurity continued to solicit information from TAHO, including █████████ ████████████████████████████████████████████████████

9

39. On December 15, 2021, Ms. Prange emailed Mr. Kao ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████.

40. On January 11, 2022, during the JPM BIO Conference, Mr. Kao met with Mr. Feil.

████████████████████████████████████████████████

████████████████████████████████████████

**E.   TAHO and Azurity Execute Confidentiality Agreement**

41. On February 16, 2022, Azurity executed the Confidentiality Agreement ("CDA") with TAHO. Azurity's General Counsel, Hanok George, signed the agreement on Azurity's behalf. A copy of the parties' executed CDA is attached as **Exhibit B.**

42. Under the CDA, the parties agreed ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

43. The CDA ████████████████████████████

44. The CDA ██████████████████████████████

████████████████████████████████████████████████

10

45.    The  CDA

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

46.    Under the explicit terms of the agreement, ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████

47.    With respect to protected information, the CDA ██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███

48.    TAHO shared its proprietary information with Defendant pursuant to the terms of the Agreement for the purpose as set forth in the agreement—████████████████████

████████████████████████████████████████

49.    The parties agreed by entering into the CDA ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

50.    The parties further agreed by entering into the CDA █████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

**F.     TAHO Shares TAHO Proprietary Information and Trade Secrets under Confidentiality Agreement**

51.     Two days after signing the CDA, Azurity, specifically Mr. Feil, requested that the ████████████████ upcoming scheduled February 23, 2022 meeting ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

52.     By this time, through four years of development work and the investment of millions of dollars in research and development, TAHO had developed trade secrets concerning its apixaban oral dissolving film product, TAH3311.

53.     TAHO's confidential information and trade secrets related to its product, TAH3311.   Specifically, TAHO's confidential information and trade secret information constituted a new valuable and attainable product opportunity with (1) proven clinical success, (2) a proven pathway avoiding patent hurdles, and (3) completed regulatory, budget, strategic, and marketing plans that showed a concrete market opportunity of significant value, all of which was embodied in TAHO's February 23, 2022 PowerPoint presentation to Azurity ("TAHO's Confidential Presentation").   The confidential and proprietary information contained within

TAHO's Confidential Presentation is the lifeblood of TAHO's business and competitive strategy for its proprietary apixaban product.

54. Among other things, TAHO's Confidential Presentation ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████.

55. Together, TAHO's Confidential Presentation gave Azurity the "key to the kingdom" and a roadmap for how, when, and at what cost TAHO and Azurity could enter the market with both a pathway to avoid patent hurdles and a proven, novel, safe alternative formulation. A competitor relying on TAHO's Confidential Presentation could use this information to eliminate the uncertainty, cost, and developmental risk otherwise inherent in independent efforts to offer an alternative apixaban product to BMS/Pfizer's Eliquis®. And, unbeknownst to TAHO, Azurity did not plan on entering the market *with* TAHO, but instead had been plotting to enter the market *in competition with* TAHO relying on TAHO's Confidential Presentation to do exactly what any competitor could do—eliminate the uncertainty, cost, and developmental risk otherwise required to launch an alternative apixaban product.

56. TAHO developed its confidential information and trade secrets over many years of extensive strategic planning and scientific development at a significant cost and expense to TAHO.

14

57. The shared TAHO confidential information and trade secrets discussed were kept confidential by TAHO.

58. TAHO's trade secrets are commercially valuable to TAHO, including because of their secrecy.

59. TAHO has taken extensive steps to protect its confidential information and trade secrets, including:

    a. Imposing confidentiality obligations on TAHO's employees and contracting parties;

    b. Entering into confidentiality agreements prior to sharing any confidential information with third parties;

    c. Physically securing TAHO's facilities;

    d. Employing computer security technologies including employing password protection and encryption on TAHO's computer systems;

    e. Limiting distribution of confidential and proprietary information to those employees and contractors with a need to know that information;

    f. Enforcing company-wide policies and procedures to ensure the security of TAHO's confidential and proprietary information;

    g. Limiting access to TAHO's trade secrets on a need-to-know basis.

60. TAHO's trade secret information was and remains confidential and cannot be readily ascertained through means other than breach of contract or misappropriation.

**G.**      **Azurity Acquires Slayback To Create a Competing Product and Gain Patent Rights**

61. Azurity represented to TAHO that ███████████████████████████ ██████████████████████████████ On information and belief, at the time of

15

TAHO's Confidential Presentation, Azurity had no U.S. patents or applications pertaining to apixaban, nor any apixaban product in development.

62.     After receiving TAHO's Confidential Presentation, on information and belief, Azurity realized the value of the opportunity as well as the strategy and pathway for executing on the opportunity, and decided that, rather than partnering with TAHO, it would take advantage of that opportunity on its own.

63.     On information and belief, Azurity breached the CDA and misappropriated TAHO's proprietary information to find another partner or opportunity with which to get to market.

64.     Azurity ultimately chose generic and specialty pharmaceutical manufacturer Slayback Pharma LLC ("Slayback") for its apixaban scheme.

65.     Azurity acquired Slayback on September 27, 2023.  Slayback became a wholly owned subsidiary of Azurity.  On information and belief, Azurity misused TAHO's proprietary, confidential, and trade secret information as described in TAHO's Confidential Presentation to inform its decision to work with and acquire Slayback.

66.     At the time of its acquisition, on information and belief, Slayback was focused on creating a capsule formulation of apixaban with a dissolution profile like Eliquis®. Slayback had filed multiple applications for patent claims on apixaban, specifically seeking liquid-filled capsules and liquid compositions of apixaban, as opposed to the tablet formulation of Eliquis®. For example, Slayback filed U.S. Patent App. No. 18/357,295, titled "Stable Pharmaceutical Compositions of Apixaban," on July 24, 2023.  U.S. Patent App. No. 18/357,295 published as U.S. Patent Pub. No. 2024/0050416.   Slayback filed a second application, U.S. Patent App. No. 18/117,808, titled "Stable Pharmaceutical Compositions of Apixaban," on March 6, 2023.

67.     Slayback, represented by its prosecution attorney Paul E. Dietze of Parker Poe Adams & Bernstein, LLP, struggled to secure patent protection over its liquid capsule form of apixaban over Pfizer and BMS's patents on Eliquis®.

68.     For example, claim 1 of U.S. Patent Pub. No. 2024/0050416 as filed on July 24, 2023, recited "a pharmaceutical composition comprising a fill material encapsulated in a capsule shell, wherein the fill material comprises: a. apixaban and b. a pharmaceutically acceptable carrier system wherein fill material is in the form of a liquid, and wherein apixaban is uniformly solubilized in the pharmaceutically acceptable carrier system."  Dependent Claim 9 as filed further recited "the pharmaceutical composition of claim 1, wherein, the composition provides **an in-vitro release of not less than 70wt% of apixaban within 30 minutes, using a 900 ml dissolution medium of 0.05 M sodium phosphate at a pH 6.8 containing 0.05% sodium lauryl sulfate, measured using USP Apparatus II, at 75 RPM at 37 °C**." U.S. Patent Pub. No. 2024/0050416, cl. 9 (emphasis added).

69.     The claims were rejected by the Patent Office as obvious and anticipated.

70.     However, after Azurity acquired Slayback on September 27, 2023, Azurity fundamentally changed the scope of the pending claims in Slayback's patent applications.

71.     On information and belief, Azurity used TAHO's proprietary and trade secret information, including the information provided in TAHO's Confidential Presentation to inform and act on its patent prosecution strategy.

72.     On January 23, 2024, the same prosecution attorney acting on behalf of Azurity, Mr. Dietze, filed a "continuation-in-part" to Slayback's pending patent application U.S. Patent Pub. No. 2024/0050416, U.S. Patent App. No. 18/420,099.  A continuation-in-part application, by definition, adds subject matter not previously disclosed in the pending patent application.

73.     On January 30, 2024, Slayback's U.S. Patent Pub. No. 2024/0050416 received a final rejection. On information and belief, Slayback ultimately failed to respond to the rejection and abandoned the application in order to pursue its new prosecution strategy with Azurity via its continuation-in-part application.

74.     Claim 1 of Defendant's continuation-in-part application U.S. Patent App. No. 18/420,099 recited: "**An immediate-release** pharmaceutical composition comprising a fill material encapsulated in a capsule shell, wherein the fill material comprises: a. apixaban and b. a pharmaceutically acceptable carrier system comprising at least one of a solubilizing agent, a crystallization inhibitor, a stabilizer, and a solvent; wherein fill material is in the form of a liquid; wherein apixaban is uniformly solubilized in the pharmaceutically acceptable carrier system; and wherein the capsule shell is a gelatin capsule coated with a functional coating; and **wherein the composition provides an in-vitro release of <u>not more than about 50 wt%</u> of the apixaban, within 60 min of dissolution in 900 ml of a 0.1 N HCl with 0.05% SLS, (pH 1.2) dissolution medium, measured using USP Apparatus II, at 75 RPM and 37°C**."  (emphasis added). Dependent claim 2 further recited: "The pharmaceutical composition of claim 1, wherein the composition provides an in-vitro release of **<u>not more than about 50 wt % of the apixaban,</u> within 60 min of dissolution in 900 ml of a 0.05 M Sodium Phosphate Buffer with 0.05% SLS, (pH 6.8) dissolution medium, measured using USP Apparatus II, at 75 RPM and 37 °C**."  In other words, Slayback pursued an entirely different dissolution profile than it had sought to patent just a year before.  Compare with claim language in paragraph 68 *supra*.

75.     On February 4, 2025, Defendant's continuation-in-part patent issued as U.S. Patent No. 12,213,972.

76.     Rather than notify TAHO that Defendant was not interested in pursuing any collaboration with TAHO, on information and belief, Defendant instead chose to continue to feign interest in a collaboration to gain additional proprietary information from TAHO, all the while advancing both its own patent portfolio and its own apixaban product.

77.     After Azurity acquired Slayback, it contacted and met with TAHO ███████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████

### H.    Azurity Develops Its Own Apixaban Product by Breaching Its Agreement with TAHO and Misappropriating TAHO's Proprietary Information

78.     Unbeknownst to TAHO, and on information and belief, Azurity had been working on its own apixaban product during the time in which it continued to request and to receive TAHO's trade secret and proprietary confidential information.

79.     In late 2025, TAHO submitted its 505(b)(2) application to the FDA seeking approval to market 2.5 mg and 5.0 mg dosages of TAH3311.  Around the same time, Azurity submitted its own 505(b)(2) application to the FDA seeking approval to market its 2.5 mg and 5.0 mg apixaban oral gel capsules.

80.     On December 23, 2025, BMS and Pfizer sued Azurity for infringement of U.S. Patent No. 9,326,945 (the "'945 patent"), *Bristol-Myers Squibb Company et al. v. Azurity Pharmaceuticals, Inc.*, 1:25cv1558 (D. Del. 2025).  According to the complaint, Azurity filed a "Paragraph IV" certification, which indicates Azurity's intention to launch its apixaban product prior to the August 24, 2031 expiration of the '945 patent.

81.    On information and belief, Azurity's proposed apixaban product, once approved, will compete directly against TAHO's TAH3311 product, once approved, as they both contain apixaban, in the same amounts, to be used to treat the same indications.

### I.    TAHO Suffers Injury and Harm Due to Defendant's Improper Use of TAHO Proprietary Information

82.    As a result of Defendant's breach of the parties' CDA and its misappropriation of TAHO's trade secrets, TAHO has suffered and will suffer injury and harm in the form of monetary damages as well as lost opportunities.

83.    On information and belief, Defendant's improper use of TAHO's proprietary and trade secret information has paved the way to allow Defendant to develop its own apixaban product and potentially launch its apixaban product ahead of TAHO's.

84.    On information and belief, Defendant's improper use of TAHO's proprietary and trade secret information will result in a loss in TAHO's anticipated market share and market position.

85.    On information and belief, Defendant's improper use of TAHO's proprietary and trade secret information has diminished the value of its TAH3311 asset.

86.    On information and belief, Defendant's improper use of TAHO's proprietary and trade secret information to pursue its own apixaban product will interfere with TAHO's opportunity to enter into a licensing or other arrangement with BMS and Pfizer.

87.    Pursuant to the CDA entered into by the parties, the parties explicitly acknowledged that ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

20

88.    The parties further agreed by entering into the CDA ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

### COUNT I :
### MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (DTSA)
### (18 U.S.C. § 1836 et seq.)

89.    TAHO incorporates paragraphs 1-88 of this Complaint as if fully set forth herein.

90.    Defendant committed trade secret misappropriation in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA").

91.    Defendant possesses trade secrets owned by TAHO.  This trade secret information belongs to TAHO because it was independently developed at TAHO.

92.    TAHO, through years of investments and development work, developed the trade secrets, including as described above.

93.    Such trade secrets were not reasonably available outside of TAHO and not readily ascertainable by proper means.

94.    TAHO's trade secrets derive economic value from their secrecy.

95.    Defendant, for example, gained a head start advantage in bringing a competing apixaban product to market from its improper use of TAHO's trade secrets and without expending the amount of resources TAHO was required to expend.  On information and belief, before Azurity began to develop an apixaban product, TAHO shared with Azurity under CDA TAHO's Confidential Presentation that supplied the "key to the kingdom" and a roadmap for how Azurity could enter the market with a proven, novel, and safer apixaban product that avoids the '945 patent.

21

96.     On information and belief, Azurity improperly utilized TAHO's trade secrets to inform its strategy and decision to acquire Slayback.

97.     On information and belief, Azurity improperly utilized TAHO's trade secrets to inform its prosecution strategy after it acquired Slayback to secure patents on apixaban.

98.     On information and belief, Defendant improperly utilized TAHO's trade secrets to seize on the substantial market opportunity that TAHO had presented in TAHO's Confidential Presentation.

99.     TAHO has and continues to take reasonable measures to protect the secrecy and confidentiality of its trade secrets, including, through requiring employees and all individuals with access to TAHO's proprietary information to sign confidentiality and non-disclosure agreements, and other measures, described above. TAHO specifically required Azurity and its representatives to sign a confidentiality agreement prior to disclosing TAHO's trade secrets to Azurity and its representatives.

100.    Defendant owed and continues to owe confidentiality obligations to TAHO, both by contract and operation of law, not to use or disclose TAHO's trade secrets, other than as set forth in the CDA.

101.    On information and belief, Defendant, through improper means, wrongfully disclosed and used TAHO's trade secrets in developing and seeking regulatory approval of its apixaban product and in seeking apixaban patents.

102.    Defendant, on information and belief, still has access to TAHO's trade secrets.

103.    TAHO's TAH3311 and Defendant's 505(b)(2) apixaban products, upon FDA approval, will be used in foreign and interstate commerce.

104.   Defendant received and misused TAHO's trade secrets knowing or having reason to know that they were being used for improper means, and in violation of legal obligations owed to TAHO.

105.   Defendant misappropriated TAHO's trade secrets willfully and maliciously.

106.   On information and belief, Defendant continues to engage in the improper use of TAHO's trade secrets and continues to benefit from its misappropriation willfully and maliciously.

107.   The actions taken by Defendant, as described above, constitute misappropriation of confidential information and trade secrets in violation of the DTSA.

108.   TAHO is being irreparably harmed by Defendant's ongoing misappropriation, in addition to pecuniary harm it has suffered.

109.   Because TAHO's remedy at law is inadequate, TAHO seeks, in addition to damages, permanent injunctive and other equitable relief, including unjust enrichment, to recover and protect its trade secrets and other legitimate business interests.

110.   TAHO is entitled to money damages, including without limitation compensatory damages and a reasonable royalty.

111.   Defendant's misappropriation is in bad faith and TAHO is entitled to an award of exemplary damages, unjust enrichment damages, and attorney's fees.

112.   As set forth through this Complaint, acts in furtherance of this offense were committed in the United States.

**COUNT II:**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE MASSACHUSETTS**
**UNIFORM TRADE SECRETS ACT (MUTSA)**
**(M.G.L. c. 93 §§ 42–42G)**

113.   TAHO incorporates paragraphs 1-112 of this Complaint as if fully set forth herein.

114.    Defendant committed trade secret misappropriation in violation of M.G.L. c. 93 §§42–42G.

115.    Defendant possesses trade secrets owned by TAHO.  This trade secret information belongs to TAHO because it was independently developed at TAHO.

116.    TAHO, through years of investments and development work, developed the trade secrets, including as described above.

117.    Such trade secrets were not reasonably available outside of TAHO and not readily ascertainable by proper means.

118.    TAHO's trade secrets derive economic value from their secrecy.

119.    Defendant, for example, gained a head start advantage in bringing a competing apixaban product to market from its improper use of TAHO's trade secrets and without expending the amount of resources TAHO was required to expend.  On information and belief, before Azurity began to develop an apixaban product, TAHO shared with Azurity under CDA TAHO's Confidential Presentation that supplied the "key to the kingdom" and a roadmap for how Azurity could enter the market with a proven, novel, and safer apixaban product that avoids the '945 patent.

120.    On information and belief, Azurity improperly utilized TAHO's trade secrets to inform its strategy and decision to acquire Slayback.

121.    On information and belief, Azurity improperly utilized TAHO's trade secrets to inform its prosecution strategy after it acquired Slayback to secure patents on apixaban.

122.    On information and belief, Defendant improperly utilized TAHO's trade secrets to seize on the substantial market opportunity that TAHO had presented in TAHO's Confidential Presentation.

123.     TAHO has and continues to take reasonable measures to protect the secrecy and confidentiality of its trade secrets, including, through requiring employees and all individuals with access to TAHO's proprietary information to sign confidentiality and non-disclosure agreements, and other measures, described above. TAHO specifically required Azurity and its representatives to sign a confidentiality agreement prior to disclosing TAHO's trade secrets to Azurity and its representatives.

124.     Defendant owed and continues to owe confidentiality obligations to TAHO, both by contract and operation of law, not to use or disclose TAHO's trade secrets, other than as set forth in the CDA.

125.     On information and belief, Defendant, through improper means, wrongfully disclosed and used TAHO's trade secrets in developing and seeking regulatory approval of its apixaban product and in seeking apixaban patents.

126.     Defendant, on information and belief, still has access to TAHO's trade secrets.

127.     Defendant received and misused TAHO's trade secrets knowing or having reason to know that they were being used for improper means, and in violation of legal obligations owed to TAHO.

128.     Defendant misappropriated TAHO's trade secrets willfully and maliciously.

129.     On information and belief, Defendant continues to engage in the improper use of TAHO's trade secrets and continues to benefit from its misappropriation willfully and maliciously.

130.     The actions taken by Defendant, as described above, constitute misappropriation of confidential information and trade secrets in violation of the MUTSA.

131.     TAHO is being irreparably harmed by the Defendant's ongoing misappropriation, in addition to pecuniary harm it has suffered.

132.    Because TAHO's remedy at law is inadequate, TAHO seeks, in addition to damages, permanent injunctive and other equitable relief, including unjust enrichment, to recover and protect its trade secrets and other legitimate business interests.

133.    TAHO is entitled to money damages, including without limitation compensatory damages and a reasonable royalty.

134.    Defendant's misappropriation is in bad faith and TAHO is entitled to an award of exemplary damages, unjust enrichment damages, and attorney's fees.

135.     As set forth through this Complaint, acts in furtherance of this offense were committed in the United States, and specifically in Massachusetts.

## COUNT III:
## BREACH OF CONTRACT

136.    TAHO incorporates paragraphs 1-135 of this Complaint as if fully set forth herein.

137.    TAHO and Azurity's CDA, attached hereto as **Exhibit B,** is a valid contract and is in full force and effect.

138.    The CDA is a valid and enforceable agreement between TAHO and Azurity.

139.    Azurity agreed to be bound by the terms of the CDA by accepting its terms, which it did when it signed the CDA on February 16, 2022.

140.    TAHO has fully performed all of its obligations under the CDA.

141.    The CDA ██████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

142. The CDA ██████████████████████████████████████

143. Specifically, the CDA provides that Defendant ████████████████████

144.   The CDA also obligates Defendant to ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████

145.   The confidentiality and non-use provisions in TAHO's agreements are intended to protect TAHO's legitimate business interest in guarding its trade secrets and confidential business information.

146.   Defendant has materially breached, without justification, its obligations under the CDA and continues to breach the confidentiality and non-use clauses of the CDA through its use of TAHO Confidential Information to develop and pursue its apixaban product.

147.   As a direct and proximate result of Defendant's material breach, TAHO has suffered injury and will continue to suffer injury.

148.   Defendant's breaches are material and caused damage to TAHO.

149.   Defendant is liable to TAHO for breach of contract under the laws of the Commonwealth of Massachusetts.

150.   TAHO is entitled to damages, including, without limitation, compensatory damages.

151.   TAHO is entitled to an award of exemplary damages, unjust enrichment damages, and attorney's fees.

152.   TAHO is entitled to specific performance requiring Defendant to destroy or return all confidential and trade secret information to TAHO and to perform any additional measures necessary to prevent any further misuse of TAHO's confidential and trade secret information.

153.   The CDA states ████████████████████████████

███████████████████████████████████████████████████████████

28

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████ TAHO is thus entitled to equitable relief at least in the form of an order and an injunction against Defendant from disclosing or using TAHO's confidential and trade secret information, in addition to money damages.

## COUNT IV:
## UNFAIR COMPETITION AND UNFAIR OR DECEPTIVE ACTS IN CONDUCT OF TRADE OR COMMERCE
## (M.G.L. c. 93A, § § 2, 11)

154.    TAHO incorporates paragraphs 1-153 of this Complaint as if fully set forth herein.

155.    TAHO and Defendant are, in various ways, engaged in trade or commerce for purposes of Mass. G.L. ch. 93A, § 11. Defendant is engaged in trade or commerce by virtue of its bringing to market and sale of more than fifty pharmaceutical products worldwide. Defendant maintains a principal place of business in Woburn, Massachusetts.

156.    TAHO and Defendant are competitors in the market for generic therapeutic products.

157.    Azurity has engaged in unfair or deceptive acts or practices. For example, it feigned interest in collaborating with TAHO while hatching a plot to instead launch its own apixaban product. Defendant requested and received TAHO's proprietary, confidential information and trade secrets under the guise of wanting to partner *with* TAHO, when in actuality it was more interested in competition *with* TAHO.

158.    TAHO's proprietary, confidential information and trade secrets, including as provided in TAHO's Confidential Presentation, gave Defendant the roadmap to entering the market with a proven, novel, safer alternative product while avoiding the '945 patent.

29

159.   Through the improper use of TAHO's proprietary, confidential information and trade secrets, Defendant received unfair advantages, including a less risky, cheaper, and faster road to the submission of its 505(b)(2) application.  Defendant used improper means to convert TAHO's proprietary, confidential information and trade secrets to further its own interests in violation of the terms of the parties' CDA.

160.   As of the date TAHO and Azurity began their collaboration discussions in 2021, Azurity had neither an apixaban product in development nor any U.S. patent or patent application on apixaban to its name.  However, in four years' time, and due to TAHO's proprietary, confidential information and trade secrets, Azurity had (1) acquired Slayback (2) acquired Slayback's apixaban patent portfolio and (3) submitted a 505(b)(2) application for its own apixaban product.

161.   Defendant further improperly used TAHO's proprietary, confidential information and trade secrets to inform and change its patent prosecution strategy and secure patents on apixaban.

162.   Azurity obtained and impermissibly used, and are continuing to impermissibly use, TAHO's confidential information and TAHO's trade secrets to further Defendant's own interests in competition with TAHO.

163.   Defendant's misleading discussions with TAHO and its subsequent use of TAHO's proprietary information for its own gain and to develop its own apixaban product and Defendant's misappropriation of TAHO's proprietary, confidential information and trade secrets constitute unfair methods of competition and an unfair or deceptive act or practice declared unlawful by Mass G.L. ch. 93A § 2.

30

164.    Defendant's committed unfair or deceptive acts or trade practices primarily and substantially in Massachusetts.  Defendant maintains a principal place of business in Woburn, Massachusetts.  On information and belief, Defendant engaged in  deceptive acts out of its principal place of business and headquarters in Woburn, Massachusetts.  On information and belief, Defendant's scheme to create an apixaban product that would compete directly against TAHO's TAH3311 was hatched, carried out, and conducted out of Defendant's headquarters in Woburn, Massachusetts.

165.    Defendant's conduct in misappropriating TAHO's proprietary, confidential information and trade secrets was undertaken willfully and knowingly thereby also entitling TAHO to an award of up to treble damages.

166.    Defendant's activities are causing and will continue to cause severe and irreparable injury to TAHO, including in the form of loss and diminution of its competitive position in the marketplace, loss of its ability to offer unique products, and lost opportunities to capitalize on its status in the marketplace, for which there is no adequate remedy at law. TAHO is therefore entitled to an injunction restraining and enjoining Defendant, including its agents, affiliates, servants, officers, directors, and employees, and all persons acting thereunder, in concert with, or on its behalf, from using in any manner TAHO's confidential information and TAHO's trade secrets.

167.    Defendant's activities have directly and proximately caused significant damages to TAHO.  These include form of loss of competitive position in the marketplace, other economic losses, and other general and specific damages in an amount to be proven at trial.

168.    As a result of Defendant's unfair competition in violation of Mass. G.L. ch. 93A, § 2, TAHO has suffered and will suffer irreparable harm, in addition to monetary damages.

**PRAYER FOR RELIEF**

TAHO respectfully requests this Court enter judgment in favor of TAHO, and award the following relief:

a)      Enter judgment in favor of TAHO and against Defendant on all Counts of this Complaint;

b)      Enter an order enjoining Defendant from violating TAHO's CDA; engaging in further attempts to misappropriate TAHO's trade secrets; seeking regulatory approval for, marketing and selling any products containing, incorporating, or derived from TAHO's confidential and trade secret information; and from using, copying, retaining, or further disclosing any of TAHO's confidential trade secret information;

c)      Enter an order requiring Defendant to destroy or return all confidential and trade secret information to TAHO and confirm in writing, verified under the pains and penalties of perjury, that all copies have been destroyed, and outline with specificity exactly what actions were taken by Defendant to ensure the return and destruction of such information, including identifying the files where all such information was located and the custodian(s) of such files;

d)      Enter an order requiring Defendant to perform any additional measures necessary to prevent any further misuse of TAHO's confidential and trade secret information;

e)      Award TAHO damages, including but not limited to actual, exemplary, and/or unjust enrichment damages, and/or a reasonable royalty, as appropriate as to each of the above claims, in favor of TAHO and against Defendant in amounts to be determined at trial;

f)      Award TAHO the amount of its direct, consequential, incidental, and special damages to which it may be entitled under Massachusetts G.L. c. 93, § 42(b) by reason of Defendant's misappropriation of trade secrets under Massachusetts G.L. c. 93, § 42.

g)      Award TAHO equitable relief, as appropriate as to each of the above claims, in favor of TAHO and against Defendant, and as appropriate, in amounts to be determined;

h)      Award TAHO enhanced and punitive damages as permitted by law, including M.G.L.c. 93 § 42B, M.G.L. c. 93A § 11, and the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836);

i)      Award TAHO its costs and attorney's fees and costs it incurred in bringing this suit including under M.G.L. c. 93 § 42B, M.G.L. c. 93A § 11, and the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836); and

j)      Award all other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff TAHO respectfully demands a jury trial pursuant to Fed. R. Civ. P. 38 on all issues so triable.

Dated:  March 17, 2026

Respectfully submitted,

**GOODWIN PROCTER LLP**

*/s/ Alexandra Lu*
Alexandra Lu (BBO# 691114)
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
ALu@goodwinlaw.com

Huiya Wu (*pro hac vice* forthcoming)
John Padro (*pro hac vice* forthcoming)
Lauren Pelletier (*pro hac vice* forthcoming)
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 813-8800
HWu@goodwinlaw.com
JPadro@goodwinlaw.com
LPelletier@goodwinlaw.com

*Attorneys for Plaintiff TAHO Pharmaceuticals,
Ltd.*